```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY

    Plaintiff,

v.                                  Civil Action No. 5:06CV109
                                          (STAMP)
ROSE M. STIPANOVICH and
SHAWN STIPANOVICH,

    Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND**
**DENYING AS MOOT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

I.  Procedural History

On September 13, 2006, the plaintiff, American National Property and Casualty Company filed a complaint for declaratory relief against the defendants, Rose M. Stipanovich and Shawn Stipanovich, seeking a declaration of its duties and responsibilities to the defendants.

On February 27, 2007, the plaintiff filed a motion for summary judgment, to which Rose Stipanovich filed a letter in response. That same day, the plaintiff filed a motion for default judgment and a petition to the Clerk of the United States District Court for the Northern District of West Virginia for entry of default, to which Rose Stipanovich filed a letter in response. To date, no further pleadings have been filed.

On February 28, 2007, the Clerk's Office, without an order from this Court, entered an "entry of default" against Rose Stipanovich.

After considering the parties' memoranda and the applicable law, this Court finds that the plaintiff's motion for summary judgment must be granted and the plaintiff's motion for default judgment must be denied as moot for the reasons stated below.

## II. Facts

On December 21, 2005, Rose Stipanovich reported an alleged house burglary to the Weirton Police Department ("police"). Shawn Stipanovich, Rose Stipanovich's son who lives in her basement, was the first person to discover the alleged burglary. Shawn Stipanovich stated that he first became aware of the alleged burglary when he returned home from an overnight stay with his girlfriend at a neighbor's house. Shawn Stipanovich asserts that when he entered the residence, he saw that the back door to the basement was smashed in and broken. He asserts that his basement bedroom had been "ransacked." (Pl.'s Mot. for Summ. J. at 3.) He then allegedly climbed the stairs to the kitchen and found that the kitchen drawers were open and the couch had been overturned. Shawn Stipanovich stated that he did not search the residence any further because his mother telephoned from the Northern Regional Jail and he went to pick her up.

Shawn Stipanovich stated that he did not telephone the police to report the burglary. Instead, Rose Stipanovich telephoned the police regarding the alleged burglary after she arrived home from the Northern Regional Jail on December 21, 2005. When the police arrived at the Stipanovich's residence, they documented that Rose Stipanovich acted "strangely" when the one officer attempted to discuss the incident with her. She initially told the officer that the only things missing from her was money from her purse, a jewelry box and pills from her bathroom. Later, on December 22, 2005, the police department received a telephone call from Rose Stipanovich. She complained to the police that her entire house was "ransacked" and that more items were missing than those originally claimed the day before. On January 3, 2006, Rose Stipanovich brought to the police department a list of missing items containing $100,000.00 worth of jewelry, a claim for destruction of property and slashed tires.

### III. Applicable Law

A. Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the

initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time

for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

B.  <u>Motion for Entry of Default Judgment</u>

The plaintiff requests entry of default judgment against the defendants. Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

Fed. R. Civ. P. 55(a).

## IV. <u>Discussion</u>

In its motion for summary judgment, the plaintiff argues that Rose Stipanovich is not covered under the homeowner's insurance policy because it is not likely that the defendants' property was stolen. In her letter in response to the plaintiff's motion for

5

summary judgment, Rose Stipanovich contends that a theft occurred at her residence and that she was not involved in that theft.

In its complaint, the plaintiff cites to certain language in the policy at issue which states that:

SECTION I - PERILS INSURED AGAINST

COVERAGE C – PERSONAL PROPERTY

> We insure for accidental, direct, and physical loss to property described in Coverage C caused by:
>
> 9. **Theft**, including attempted theft and loss of property from a known location when it is likely that the property has been stolen . . .
>
> ************text omitted*************
>
> This peril does not include loss caused by theft:
>
> a. committed by an **insured**, or any person regularly residing on the **residence premises**:

**Section I - CONDITIONS**

**1. Insurable Interest and Limit of Liability.**

> Even if more than one person has an insurable interest in the property covered, we shall not be liable.
>
> a. to the **insured** for an amount greater than the **insured's** interest at the time of the loss; nor
>
> b. for some than the applicable **limit of liability**

**2. Your Duties After Loss.**

> In case of a loss to which this insurance may apply, you shall see that the following duties are performed.
>
> a. give immediate notice to us or our agent, and in case of theft also to the police. In case of loss under the Credit Card or Fund Transfer Card coverage also notify the credit card or fund transfer card company.

b. protect the property from further damage, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair costs.

c. prepare an inventory of damaged personal property showing in detail, the quantity, description, **actual cash value**, and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory,

d. as often as we reasonably require:

(1) exhibit the damaged property;
(2) provide us with records and documents we request and permit us to make copies;
(3) let us record your statements and submit to examinations under oath by any person named by us and sign the transcript of the examination; and
(4) produce employees, members of the **insured's** household, or others for examination under oath to the extent it is within the insured's power to do so; and

e. submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and believe;[1]

(1) the time and cause of loss;
(2) interest of the **insured** and all others in the property involved and all encumbrances on the property;
(3) other insurance which may cover the loss;
(4) changes in title or occupancy of the property during the term of the policy;
(5) specifications of any damaged building and detailed estimates for repair of the damage;
(6) an inventory of damaged personal property described in 2c;
(7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

---

[1]The plaintiff quotes the policy language at issue in this civil action to state "believe." This Court notes that the plaintiff probably meant the term "belief" be used.

>     (8) evidence or affidavit supporting a claim
>     under the Credit Card, Fund Transfer Card,
>     Forgery, and Counterfeit Money coverage,
>     stating the amount and cause of loss.

Because this Court has not received a copy of the insurance policy, it must look to the language provided by the plaintiff in the complaint. Defendants do not dispute the policy language cited by the plaintiff.

The issue in this civil action is what duties and responsibilities the plaintiff owes to the defendants under the homeowner's insurance policy issued to Rose Stipanovich by the plaintiff. This Court finds that the plaintiff owes no duty to the defendants under the homeowner's insurance policy at issue in this action.

As stated in the policy language quoted above, "this peril does not include loss caused by theft: a. committed by an insured, or any person regularly residing on the residence premises . . . ." The insurance policy expressly states that a theft occurs under the policy when "it is likely that the property has been stolen."

It is well established in West Virginia that "where the provisions of an insurance policy contract are clear and unambiguous, they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Keffer v. Prudential Ins. Co., 153 W. Va. 813, 815-16 (1970). This Court finds that the provisions of the policy at issue are clear and unambiguous.

Although this Court does not have the policy at hand, the plaintiff asserts that the insurance policy does not define the term "theft." (Pl.'s Mot. for Summ. J. at 11.) An insurance policy is construed to give effect to the intent of the parties as expressed in the language of the policy, which is interpreted as a reasonable person in the position of the insured would understand it. <u>Folkman v. Quamme</u>, 665 N.W.2d 857, 864 (Wis. 2003).

Typically, insurance polices do not contain elaborate definitions of the term "theft." <u>See</u> 37 Am. Jur. 3d <u>Proof of Theft Within Property Insurance Coverage</u> § 91. When a term is undefined, many courts have given the term a common and ordinary meaning understandable to the average person. <u>See e.g.</u> <u>Spell v. Farm Bureau Town & Country Ins. Co.</u>, 871 S.W.2d 57 (Mo. App. E.D. 1994). Black's Law Dictionary defines "theft" as "[t]he taking of property without the owner's consent" and the "fraudulent taking of personal property belonging to another, from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking." <u>Black's Law Dictionary</u>, 1477 (6th ed. 1990). Further, the insurance policy at issue states that the theft is covered when "it is likely that the property has been stolen."

The burden of proving theft under a policy of insurance is on the insured, <u>Davis v. St. Paul Mercury & Indem. Co.</u>, 40 S.E.2d 609,

609 (N.C. 1946). The insured also has the burden to prove the amount and value of the property stolen. Coastal Plains Feeders, Inc. v. Hartford Fire Ins. Co., 545 F.2d 448 (5th Cir. 1977). An insured may present circumstantial evidence of theft to establish a prima facie case. See e.g. Wiley v. United Fire & Cas. Co., 220 N.W.2d 635 (Iowa 1974). To present sufficient circumstantial evidence of theft under a policy, the insured must present evidence which raises more than a possibility or speculation that a theft has occurred. Id.

As stated in Wiley:

> Where circumstantial evidence is relied on, it must be sufficient to make the theory asserted reasonably probable, not merely possible, and more probable than any other theory based on such evidence.

This Court notes that the facts are disputed by the parties in this civil action. Plaintiff provides statements from Angela Bennett ("Bennett") that Shawn Stipanovich did not own the items he listed as stolen to the police department. (Pl.'s Mot. for Summ. J. Ex. 1 at 8.) Bennett also asserts that she and Shawn Stipanovich took $500.00, without asking, from Rose Stipanovich's purse to buy heroin. Further, Bennett asserts that Shawn Stipanovich asked her to make a list of the Christmas gifts that they had bought when in fact there "was no Christmas gifts bought." (Pl.'s Mot. for Summ. J., Ex. 1 at 22-23.) In a statement, under oath, Shawn Stipanovich also admits that he took money from his mother's purse, took her prescription pain medication and took two

10

pieces of jewelry that he then gave to Bennett. Based upon these statements, this Court finds that these items are not covered under the insurance policy because it is not likely that these items were stolen by someone <u>not</u> in the residence. (emphasis added).

As for the other alleged items, the plaintiff asserts that there is an uncertainty of the date and scope of the alleged theft, which means that it is unlikely that Rose Stipanovich could prove that a theft occurred at her residence. Plaintiff further provides testimony from Bennett that these items never existed or that Shawn Stipanovich took them to pawn in order to buy narcotics. In response, Rose Stipanovich asserts that a theft occurred at her residence.

This Court finds that it is unlikely that a theft occurred at Rose Stipanovich's residence. First, this Court notes that Rose Stipanovich was at the Northern Regional Jail when the alleged theft occurred and that her son, Shawn Stipanovich, informed her of the alleged theft after she returned home. Second, Bennett stated that there was no burglary on the night before Rose Stipanovich arrived home from the Northern Regional Jail because she was with Shawn Stipanovich in the residence at that time. Third, there is little to no evidence that a burglary occurred at the residence. This Court first notes that Shawn Stipanovich was uncertain as to which day the burglary occurred. The statements from him are unclear whether the burglary occurred "around 12-20-05 or 12-21-

05," a Tuesday or Wednesday, as alleged in the police incident report or on the day of the alleged "sleep-over," which occurred on the previous weekend. (Id. Ex. 5.) This statement also conflicts with Bennett's assertion that they spent the night with friends after Rose Stipanovich was released from the Northern Regional Jail. According to Bennett's statements, the "sleep-over" occurred after the alleged burglary occurred. This Court also notes that while Rose Stipanovich asserts that her door frame was damaged in the alleged burglary, Bennett and John Spears testified that the door frame looked the same after the alleged burglary as it did before.[2] Further, this Court notes that the police officer's statement and Rose Stipanovich's statement differ on the facts of the investigation. The police assert that they were not permitted to enter the upstairs of the residence to evaluate the scene or collect physical evidence. Rose Stipanovich contends that the police decided not go upstairs and that she never refused them entry to that space. After the incident, she asserts that she telephoned the police to ask them if they were going to come to her residence to take fingerprints and look for clues. Plaintiff asserts that, after a police investigation, no fingerprints from the alleged burglar were found in the downstairs of the residence.

---

[2]John Spears testified that he has known Shawn Stipanovich since childhood. He also testified that he has been in the Stipanovich residence on numerous occasions and that he had entered through the basement door on several occasions. (Pl.'s Mot. for Summ. J., Ex. 5 at 26-27.)

Plaintiff also asserts that if Rose Stipanovich was cooperating with the police she could have taken a lie detector test. Finally, this Court notes that Rose Stipanovich initially asserted that the only items taken from her residence were $400.00 in cash, credit cards and jewelry. Then, approximately thirteen days later, Rose Stipanovich provided the police with a list of $100,000.00 worth of personal property.

After a review of the entire record and the statements provided by the parties, this Court finds that Rose Stipanovich has not presented sufficient evidence that raised more than a possibility or speculation that a theft occurred. Thus, this Court finds that Rose Stipanovich has not met her burden of proof that a theft occurred at her residence.

Accordingly, this Court finds that the plaintiff's motion for summary judgment must be granted and the plaintiff's motion for default judgment must be denied as moot.

## V. Conclusion

For the reasons stated above, the plaintiff, American National Property and Casualty Company's motion for summary judgment is hereby GRANTED and the plaintiff's motion for default judgment is hereby DENIED AS MOOT. Accordingly, this civil action is DISMISSED and STRICKEN from the active docket of this Court.

Defendants, who are proceeding pro se, are advised that they have the right to appeal the judgment of this Court to the Fourth

Circuit Court of Appeals.  Notice of such appeal must be filed with the Clerk of this Court within thirty days after the date of the entry of this order.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    August 16, 2007

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE